UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-9391-GW-SSCx | Date | November 4, 2026 |
| Title | *Abri Dunn v. GCA Education Services, Inc., et al.* | | |

| | | |
|---|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**PROCEEDINGS: IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS' MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY THIS ACTION [14]**

Attached is the Court's Tentative Ruling on Defendants' Motion [14] set for hearing on November 5, 2026 at 8:30 a.m.

: 

Initials of Preparer JG

Before the Court is GCA Education Services, Inc.; ABM Education Services, LLC; GCA Services Group of California, Inc.; GCA Services Group of Texas, L.P.; GCA Services Group, Inc.; and ABM Industry Groups, LLC's (together, "Defendants") Motion to Compel Arbitration, Strike Class Allegations, and Stay This Action (the "Motion"). *See* Motion, Docket No. 14-1. The Court has considered the Motion, Abri Dunn's ("Plaintiff") opposition ("Opp," Docket No. 15), Defendants' reply ("Reply," Docket No. 16), and the various declarations submitted in connection with those filings. For the reasons stated herein, the Court would **GRANT** the Motion.

## I. Background

### A. Procedural Background

On June 30, 2026, Plaintiff filed a class action complaint in the Superior Court of the State of California for the County of Los Angeles bringing various wage and hour claims. *See generally* Complaint ("Compl.," Docket No. 1-1). On August 21, 2026, Defendants removed the case to this Court. *See* Docket No. 1. Plaintiff did not move for remand. On September 28, 2026, Defendants filed the instant Motion. *See* Docket No. 14. On October 8, 2026, Plaintiff filed her Opposition. *See* Docket No. 15. On October 15, 2026, Defendants filed their Reply. *See* Docket No. 16.

### B. Factual Background

Defendants are related companies that are generally in the business of providing custodial and janitorial services to educational institutions. *See* Declaration of Paige Tamada ("Tamada Decl.," Docket No. 14-3) ¶ 5. Plaintiff was hired by GCA Education Services, Inc. as a Cleaner in July 2024 and alleges her employment ended around September 2025. *See id.* ¶ 10; *see also* Compl. ¶ 7. On September 4, 2024, GCA Education Services, Inc., Plaintiff's former employer, converted to ABM Education Services, LLC.[1] *See* Tamada Decl. ¶ 7. The remaining Defendants in this case, namely, GCA Services Group of California, Inc.; GCA Services Group of Texas, L.P.; GCA Services Group, Inc.; and ABM Industry Groups, LLC are "subsidiaries of ABM Industries Incorporated, the ultimate corporate parent of ABM Education Services, LLC, within the same

[1] Defendants indicate that GCA Education Services, Inc. was organized under Tennessee law, and Tennessee's conversion statute "confirms that ABM Education Services, LLC is the same legal entity as, and the direct successor-in-interest to, GCA Education Services, Inc. as to the agreement at issue." *See* Motion at 8 n.1. Plaintiff does not appear to dispute this. *See generally* Opp.

corporate family." *See id.* ¶ 8.

Plaintiff contends that on or around July 15, 2024, she was interviewed by two individuals named Dawn and Ernesto for approximately ten minutes before being offered a job. *See* Declaration of Abri Dunn ("Dunn Decl.," Docket No. 15-1) ¶ 4. Plaintiff was informed that she would receive additional employment documents to complete along with a background check, and that all of the documents would need to be completed in order for Plaintiff to begin work. *See id.* Dawn and Ernesto informed Plaintiff to ensure that all documents were completed in order to avoid any delays. *See id.*

One of the documents Plaintiff was presented with as part of her onboarding process was a separate, four-page document titled "MUTUAL ARBITRATION AGREEMENT – California" (the "Agreement," Ex. A to Tamada Decl.). Plaintiff was able to access this and other documents on a digital onboarding system as part of the onboarding process using an employee number and unique password; Defendants could not access that password or electronically sign documents on a candidate's behalf. *See* Tamada Decl. ¶ 16. The system required Plaintiff to scroll through the entire Agreement before reaching the signature block. *See id.* ¶ 18. The Agreement appears to have been electronically signed by Plaintiff on July 15, 2024, at 9:50:42 PM (presumably Pacific Standard Time).


Abri Dunn
**Employee Signature**

Abri Dunn
**Employee Name**

July 15, 2024
**Date**

**IP ADDRESS:** 142.129.176.65, 23.217.119.152, 23.206.195.140|172.17.83.105

**SIGN TIME:** 21:50:42

*See* Agreement at 4. Because the parties' dispute centers on unconscionability, the Court will discuss the Agreement's relevant terms as they arise in the analysis below. After Plaintiff signed the Agreement and completed the onboarding process, she received her start date. *See* Dunn Decl. ¶ 5.

## II. Legal Standard

The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). A party aggrieved by the refusal of another party to

arbitrate under a written arbitration agreement may petition the court for an order compelling arbitration as provided for in the parties' agreement. *See* 9 U.S.C. § 4. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "Though the FAA reflects an emphatic federal policy in favor of arbitral dispute resolution that requires courts to rigorously enforce agreements to arbitrate, it does not require parties to arbitrate when they have not agreed to do so." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (internal quotation marks and citations omitted). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1193-94 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016).

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Federal Rule of Civil Procedure 56. The party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inferences in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration." *Mitchell v. Lineage Logistics Servs. LLC*, 769 F. Supp. 3d 1132, 1138 (E.D. Cal. 2025) (internal quotation marks and citations omitted). If there is no genuine dispute of material fact as to the threshold question of whether the parties formed an arbitration agreement, "the Court may deny [a motion to compel arbitration] or order the parties to arbitration as appropriate." *Hoang v. Citibank, N.A.*, 702 F. Supp. 3d 864, 868 (N.D. Cal. 2023) (citing *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021)). However, if the validity of the arbitration agreement is at issue, the motion to compel arbitration "must be held in abeyance until any factual issues are resolved." *Id.* (citing 9 U.S.C. § 4 and *Hansen*, 1 F.4th at 672). The "party seeking to compel arbitration . . . bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson*, 57 F.4th at 681. "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v.*

*Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks omitted).

The FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," *Concepcion*, 563 U.S. at 339. As to unconscionability under California law, the California Supreme Court has discussed the doctrine in the following terms:

> One common formulation of unconscionability is that it refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.
>
> The prevailing view is that procedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. Courts may find a contract as a whole or any clause of the contract to be unconscionable.

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (emphasis in original) (citations omitted) (cleaned up). Furthermore, "[a]n evaluation of unconscionability is highly dependent on context . . . . The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* at 911-12 (citations omitted); *see also Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024).

## III. <u>Discussion</u>

Plaintiff does not present argument regarding contract formation, does not appear to dispute that her claims fall within the scope of the Agreement, and does not contend that the *Armendariz* requirements are unmet. *Compare* Opp. at 3-10 *with* Motion at 11-16. The Court would therefore deem forfeited any challenge to Defendants' arguments on those (and other unaddressed material) points. *See, e.g.*, *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the

uncontested issue[s].”). Plaintiff's Opposition only contends that the Agreement is not enforceable because it is both procedurally and substantively unconscionable, and the unconscionable provisions are not severable[2]. *See* Opp. at 3-10. The Court addresses these arguments in turn.

**A. Unconscionability**

1. Procedural Unconscionability

“A procedural unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis.” *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (internal quotation marks and citations omitted). “Arbitration contracts imposed as a condition of employment are typically adhesive.” *Id.* “Some California courts have held that in itself a finding of a contract of adhesion is essentially a finding of procedural unconscionability.” *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024) (brackets and internal quotation marks omitted) (collecting cases). However, “a contract of adhesion is not per se unconscionable,” and only evinces procedural unconscionability to “some degree.” *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (internal quotation marks omitted); *Suchite v. ABM Aviation, Inc.*, 741 F. Supp. 3d 878, 886 (S.D. Cal. 2024) (“The adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most.” (internal quotation marks omitted)).

If a contract is adhesive, then “[t]o determine whether the arbitration agreement involves more than ‘minimal’ procedural unconscionability, [courts] consider ‘whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required.’” *Ronderos*, 114 F.4th at 1090 (quoting *OTO*, 8 Cal. 5th at 126). “Oppression occurs where a contract involves lack of negotiation and meaningful choice.” *OTO*, 8 Cal. 5th at 126 (internal quotation marks and citations omitted). Circumstances relevant to oppression include: “(1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.” *Id.* at 126-27 (internal quotation marks omitted). “Surprise may occur

[2] Because the Court would not find the challenged provisions of the Agreement unconscionable, it need not address severability.

when the allegedly unconscionable provision is hidden within a prolix printed form" or "when its substance is opaque." *Ronderos*, 114 F.4th at 1091 (internal quotation marks omitted).

Plaintiff contends that the Agreement is a "contract of adhesion" based on the factual circumstances surrounding its execution. *See* Opp. at 4-5. Plaintiff contends that upon being offered a position, she was instructed by Defendants' agents that "she would receive additional employment documents to complete," and that she was to "ensure that she completed *all* of the additional employment documents, including the Agreement, along with a background check" in order to start working. *See id.* (citing Dunn Decl. ¶¶ 4-6) (emphasis in original). Moreover, Plaintiff states that she was never informed by Defendants' agents that the Agreement was voluntary. *See id.* Accordingly, "based on the representations made to Plaintiff that *all* employment documents needed to be completed, the Agreement is a contract of adhesion and therefore procedurally unconscionable." *See id.*

Defendants contend that the Agreement explicitly states that it is optional. *See* Agreement at 3 ("I understand that I may choose whether to enter into this Agreement. Entering into this Agreement is not a condition of my employment, continued employment, or entitlement to employment-related benefits. The Company will not discriminate or retaliate against me if I do not agree to this Agreement."). Defendants also note that they placed no limit on Plaintiff's time to review the Agreement or ask questions, and the Agreement advised her in capital letters to seek legal advice. *See* Tamada Decl. ¶¶ 17-19; *see also* Agreement at 3.

The Court would largely agree with Defendants. Plaintiff does not contend that she was given any time limit to review and complete the Agreement, although the Agreement was part of the onboarding process which she would have to complete before starting work for Defendants. *See* Opp. at 4-5. Defendants confirm that they "do[] not limit the amount of time a candidate may take to review the Agreement, and do[] not limit the questions a candidate may ask about it." *See* Tamada Decl. ¶ 19. The Agreement, in capitalized, bold text, "advis[es] [Plaintiff] to seek legal advice as to [her] rights and responsibilities under [the Agreement]." *See* Agreement at 3. Although Defendants' agents' instruction to Plaintiff that she was required to complete "all" employment documents somewhat supports the inference that she understood signing every document, including the Agreement, was necessary, that inference is undermined by the text of the Agreement, which explicitly states that Plaintiff's "employment, continued employment, or entitlement to employment-related benefits" will not be impacted should she choose not to enter

into it. *See* Agreement at 3. The Agreement, while necessarily legally complex, is also not unduly lengthy; excluding the signature page, it is three pages long and is "organized into lettered paragraphs, each addressing a distinct subject." *See id.* ¶ 17; *see generally* Agreement. Based on these circumstances, the Court would find, at most, a small degree of procedural unconscionability. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (affirming district court's order compelling arbitration, and noting that plaintiff "was not presented with a contract of adhesion because he was given the opportunity to opt-out" while being allowed "to keep his job" and that the "arbitration agreement [] also lacked any other indicia of procedural unconscionability" because plaintiff was encouraged to "consult an attorney prior to deciding" and had "30 days to decide whether to participate in the [arbitration] program").

2. Substantive Unconscionability

Where a "moderate degree of procedural unconscionability" is present, a Court must closely scrutinize an agreement for substantive unconscionability. *Ronderos*, 114 F.4th at 1094. "Substantive unconscionability examines the fairness of a contract's terms." *Id*. (internal quotation marks omitted). "When determining substantive fairness, the relevant question is whether one party used their superior bargaining position to impose terms that are overly harsh, unduly oppressive, or unfairly one-sided." *Id*. (internal quotation marks omitted). Although the Court would not find the existence of a "moderate degree" of procedural unconscionability, as discussed above, it nevertheless will analyze in detail Plaintiff's arguments regarding substantive unconscionability, which comprise the vast majority of her briefing.

Plaintiff contends that the Agreement is substantively unconscionable because it (1) is overly broad; (2) lacks mutuality; and (3) has an indefinite duration. The Court will address these arguments in turn.

*a. Scope*

Plaintiff first contends that the Agreement is overbroad because its definition of "Covered Claim[]" encompasses "not just employment claims, but also any federal, state, or local laws." *See* Opp. at 7 (emphasis omitted). Defendants contend that the Agreement's language makes clear that it covers "only employment-related disputes" and maintain that the Ninth Circuit has already reviewed, construed, and affirmed virtually identical language in another arbitration agreement. *See* Reply at 9. The Agreement, in relevant part, provides:

Covered Claims ***include, but are not limited to, any claim*** for breach of contract,

> for any provision of federal or state labor code or a Wage Order, for unpaid fees, expenses, wages, or overtime, for unpaid compensation or penalties for missed meal or rest breaks, for wrongful termination, for unfair competition, for discrimination, harassment, or unlawful retaliation, for violation of the Uniformed Services Employment and Reemployment Rights Act, for violation of the Fair Labor Standards Act, ***or any federal, state, or local laws*** to the full extent permitted by applicable federal law after the application of Federal Arbitration Act ("FAA") preemption principles.

Agreement ¶ A (emphasis added). Plaintiff argues that the "include, but are not limited to" language, read in conjunction with the "any federal, state, or local laws" language renders the Agreement "broad in scope and consequently substantively unconscionable." *See* Opp. at 5-8. Plaintiff urges this Court to "follow the analysis set forth by *Stoker v. Blue Origin, LLC*, 120 Cal. App. 5th 91, 108 (2026)." *See* Opp. at 7. The operative language in *Stoker* was as follows:

> This arbitration agreement applies ***to any and all claims***, disputes, or controversies between the Company and me, including, without limitation, claims arising out of or relating to my employment application and/or hiring process, employment with the Company, and/or any termination of my employment, claims for breach of this Agreement or otherwise relating to or arising out of this Agreement, ***tort claims***, breach of contract claims, wage and hour claims including without limitation under the Fair Labor Standards Act, the Washington Minimum Wage Act and other Washington wage and hour statutes, and any other federal, state, and local wage and hour statutes, fee claims, claims under federal, state and local anti-discrimination, anti-harassment, and anti-retaliation laws and all other statutes governing the employment relationship, and any other employment-related claims, whistleblower claims, ***and all claims for violation of any federal, state, or other governmental law, statute, regulations, or ordinance***.

*Stoker*, 120 Cal. App. 5th at 99 (emphasis added). The California court found the above provision to be overbroad and "not limited to claims arising out of the employment relationship" because it applied to "any claim that might arise at any time between [the parties] or its parent, subsidiaries, affiliates, successors or assigns, or employees of any of these entities," including "if [plaintiff] were to be injured in an automobile accident with another [of defendant's employees] years after his employment ended or if his house were damaged by debris from [defendant's] rocket." *See id.* at 108. The court also rejected defendant's contention that the agreement's expansive "any and all claims, disputes, or controversies between the Company and me" language was narrowed by the "including, without limitation, claims arising out of or relating to my employment" clause that followed it and noted that had defendant "intended to subject only employment-related claims to arbitration, it would have been a simple matter to say so." *See id.*

Defendants, however, point the Court to *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168 (9th

Cir. 2026). Like Plaintiff here, the *Cocom* plaintiff previously worked as an airport janitor for ABM Aviation, Inc.[3] ("ABM Aviation"), which offers commercial janitorial services to airports. *See id.* at 1171. The plaintiff filed a putative wage and hour class action against ABM Aviation. *See id.* Another court in this District denied ABM Aviation's motion to compel arbitration, finding the arbitration agreement procedurally and substantively unconscionable. *See id.* The Ninth Circuit reversed. *See id.* at 1180. In doing so, the Ninth Circuit evaluated and rejected the *Cocom* plaintiff-respondent's arguments concerning scope, duration, and mutuality – arguments similar to those presented in Plaintiff's Opposition.

As to scope, the *Cocom* agreement provided in relevant part:

> Covered Claims ***include, but are not limited to, any claim*** for breach of contract, for any provision of federal or state labor code or a Wage Order, for unpaid fees, expenses, wages, or overtime, for unpaid compensation or penalties for missed meal or rest breaks, for wrongful termination, for unfair competition, for discrimination, harassment, or unlawful retaliation, for violation of the Uniformed Services Employment and Reemployment Rights Act, for violation of the Fair Labor Standards Act, ***or any federal, state, or local laws*** to the full extent permitted by applicable federal law after the application of Federal Arbitration Act ... preemption principles.

*Id.* at 1172 (emphasis added). This provision appears virtually identical to the provision in the Agreement. The Ninth Circuit found that this language "is limited to employment-related disputes, making this case distinguishable from" *Stoker*. *See id.* at 1175. The Ninth Circuit applied the interpretive principle of *ejusdem generis*, which provides that "where specific words follow general words in a contract, the general words are construed to embrace only things similar in nature to those enumerated by the specific words." *See id.* The Ninth Circuit found that under this principle, the general terms in the *Cocom* agreement (*e.g.*, "any claim") are limited by the subsequent list of "specific" and "employment-related" terms (*e.g.*, "for breach of contract, for any provision of federal or state labor code or a Wage Order, for unpaid fees, expenses, wages, or overtime, for unpaid compensation or penalties for missed meal or rest breaks, for wrongful termination," etc.). *See id.* The Ninth Circuit also distinguished *Stoker* because the "enumeration of covered claims [in that case] included tort claims, and the court used torts unrelated to employment to illustrate the agreement's unconscionable breadth." *See id.* at 1175-76. It also

[3] Given the similarity in naming convention and business, ABM Aviation appears to be affiliated with Defendants. The virtual identity of the arbitration agreement in that case and the Agreement here is, accordingly, unsurprising.

found that the "context of other [] provisions [in the agreement] support[ed] the narrower reading" that it applied only to employment-related disputes, including that it provided that "arbitrations are to be governed by the AAA Employment Arbitration Rules and Mediation Procedures," which indicate that they are to be applied "in the interest of providing an appropriate forum for the resolution of employment disputes." *See id.* at 1176-77 (quotations omitted).

*Cocom* is a published Ninth Circuit decision applying California law. "Circuit precedent interpreting state law . . . is only binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect." *AGK Sierra de Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136, 1138 (9th Cir. 2024) (reversing course on interpretation of California law after "California appellate courts have uniformly rejected [the Ninth Circuit's] reasoning" on the matter); *see also Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their own circuit."). The *Cocom* decision was issued on June 23, 2026, and Plaintiff does not point the Court to any subsequent cases from California courts criticizing or disagreeing with *Cocom*. The Court has identified two subsequent California decisions citing *Cocom*, both of which are unpublishable; non-citable before California courts, *see* Cal. Rules of Court 8.1115; and, at most, distinguish rather than criticize *Cocom*. *See Olga v. Suburban Motors, Inc.*, No. C102486, 2026 WL 3215940, at *8-9 (Cal. App. 3d Dist. Oct. 27, 2026) (agreeing with *Cocom*'s reasoning, but distinguishing it); *Saldivar v. Entravision Commc'ns Corp.*, No. B346756, 2026 WL 2592722, at *6-7 (Cal. App. 2d Dist. Sept. 2, 2026) (distinguishing *Cocom* because the agreement at bar was unambiguous, obviating the need for any canons of interpretation, including *ejusdem generis*). Absent "subsequent indication from the California courts" that *Cocom* was wrongly decided, this Court is bound by the Ninth Circuit's decision. Accordingly, it would find that the Agreement's scope "is limited to employment-related disputes," making it distinguishable from *Stoker*. *See Cocom*, 179 F.4th at 1175. The Court would also agree with the Ninth Circuit's decision in this regard that the *Stoker* agreement appears, on its face, broader than the one here. *See Stoker*, 120 Cal. App. 5th at 99 (explicitly including "tort claims" and "all" claims for "violation of any federal, state, or other governmental law, statute, regulations, or ordinance").

Indeed, numerous California district courts have applied *Cocom* in other cases involving arbitration agreements. *See, e.g.*, *Franklin v. AMN Healthcare Lab. Disruption, Inc.*, No. 25-CV-03527-AJB-VET, 2026 WL 2855604, at *10 (S.D. Cal. Sept. 18, 2026) ("Under these

circumstances, *Cocom* governs and establishes that [plaintiff's] concerns regarding the duration and scope of the [a]rbitration [a]greement do not rise to the level of substantive unconscionability."); *O'Malley v. Williams-Sonoma, Inc.*, No. 26-CV-01276-RFL, 2026 WL 2640697, at *6-7 (N.D. Cal. Sept. 8, 2026) (citing and relying on *Cocom* to find that "[p]laintiffs have not shown that the agreement's scope, duration, and lack of mutuality exhibit [a sufficient] degree of substantive unconscionability"); *Nieva v. Macys Retail Holdings, LLC*, No. 2:26-cv-01284-MWF-(CTSx), 2026 WL 2350756, at *6 (C.D. Cal. June 30, 2026) (citing *Cocom* in discussing substantive unconscionability and ultimately "find[ing] the agreement to arbitrate is not unconscionable").

Plaintiff contends that "in making its ruling [in *Cocom*], the Ninth Circuit did not address the entire listed examples, which includes any federal, state, or local laws" and that the inclusion of this language "unambiguously provides that 'Covered Claims' included, in addition to employment-related claims, any [claims under] federal, state, or local laws." *See* Opp. at 8. But while not explicitly discussed, that language was cited in *Cocom* and the Ninth Circuit nevertheless did not find the definition of covered claims overbroad. *See Cocom*, 179 F.4th at 1172. In response, Defendants argue that the "any federal, state, or local laws" language is a "general phrase at the end of a specific list of items," namely, "sources of law under which the listed employment disputes may arise." *See* Reply at 10; *see also* Agreement ¶ A ("Covered Claims include, but are not limited to, any claim . . . ***for violation of the Uniformed Services Employment and Reemployment Rights Act, for violation of the Fair Labor Standards Act, or any federal, state, or local laws***.") (emphasis added)). Under *ejusdem generis*, the "federal, state, or local laws" language, they contend, "does not add a new, unlimited category of claims." *See* Reply at 10.

The Court would agree with Defendants, and additionally note that the provision's parallel grammatical structure supports their reading. Each specifically enumerated example of what "Covered Claims" include is introduced by "for" (*e.g.*, "Covered Claims include . . . any claim ***for*** breach of contract, ***for*** any provision of federal or state labor code or a Wage Order, ***for*** unpaid fees, expenses, wages, or overtime, ***for*** unpaid compensation or penalties for missed meal or rest breaks," and so on). *See* Agreement ¶ A (emphasis added). In contrast, "or any federal, state, or local laws" omits the introductory "for" and appears immediately after "for violation of the Uniformed Services Employment and Reemployment Rights Act" and "for violation of the Fair Labor Standards Act." *See id.* The Court would find that this language is thus most sensibly read

together with the clauses immediately preceding it, such that the language merely captures additional claims arising under federal, state, or local laws similar to the two specifically enumerated employment-related statutes. *See id.* (read together, "Covered Claims include, but are not limited to, any claim . . . ***for violation of the Uniformed Services Employment and Reemployment Rights Act, for the violation of the Fair Labor Standards Act, or any federal, state, or local laws***") (emphasis added)). Under another canon of interpretation, *noscitur a sociis*, a word "is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Here, the "any federal, state, or local laws" language appears immediately after a reference to the Fair Labor Standards Act – of course, an employment law statute – and, more broadly, an enumeration of other employment-related claims, such as claims involving wages or overtime. *See* Agreement ¶ A. Read in full context, the Court would find that the "any federal, state, or local laws" language merely covers further, unlisted, bases for other employment claims, does not encompass claims "unrelated to employment," and provides no basis upon which this Court may depart from the Ninth Circuit's binding decision in *Cocom*. *See* Opp. at 8.

*b. Mutuality*

Plaintiff separately contends that the Agreement "lacks mutuality" because it "provides [an] unjustifiable and significant benefit to Defendants' related entities without any reciprocal benefit to Plaintiff" which Plaintiff contends is "particularly alarming considering the vast reach of ABM Industries." *See* Opp. at 8-9. The Agreement defines the "Company" as "ABM Industries Incorporated and its subsidiary companies," which includes GCA Education Services, Inc. (and its successor ABM Education Services, LLC), which previously employed Plaintiff, among other entities. *See* Agreement at 1. The Agreement further provides that a "Covered Claim" is "to the maximum extent permissible pursuant to federal law, any claim that the Company has against me or that I have against the Company, its past, present, and future parent(s), subsidiaries, affiliates, and/or their respective past, present, and future officers, directors and/or employees," as well as ABM Industries Incorporated's "client(s) and/or vendor(s)." *See id.* ¶ A.

Plaintiff points the Court to *Cook v. University of Southern California*, 102 Cal. App. 5th 312 (Cal. App. 2d Dist. 2024). There, a California Court of Appeal affirmed the trial court's denial of USC's motion to compel arbitration because, among other things, the arbitration agreement "lacked mutuality because it required [plaintiff] to arbitrate her claims against USC and all of

USC's 'related entities' including officers, trustees, administrators, employees, and agents" but "only required USC to arbitrate its claims against [plaintiff] but did not require USC's 'related entities' to arbitrate their claims against [plaintiff]." *See id.* at 319; *see also id.* at 317 ("Therefore the University and the faculty or staff member named below ('Employee') agree to the resolution by arbitration of all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against ***University or any of its related entities***, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims ***that the University may have against Employee*** . . . .") (emphasis added)). The California Court of Appeal found that although an arbitration agreement "cannot be unconscionable simply because it provides benefits to third parties," the issue is that the agreement engaged in "one-sided treatment," conferring a benefit on USC and its related entities, but not to plaintiff. *See id.* at 327. Moreover, the *Cook* court also noted that "nonsignatories may enforce an arbitration agreement against a party to the agreement simply by showing they are intended third party beneficiaries of the arbitration agreement," whereas "for [plaintiff] to enforce the arbitration agreement against USC's agents or employees as third party beneficiaries, she would have to show they actually accepted a benefit under the agreement." *See id.* at 328.

Defendants again rely on *Cocom*. *See* Reply at 13. As was the case with the provision defining "Covered Claims," the *Cocom* agreement contains virtually identical language covering "past, present, and future parent(s), subsidiaries, affiliates, and/or their respective past, present, and future officers, directors, and/or employees," as well as ABM's "client(s) and/or vendor(s)." *See Cocom*, 179 F.4th at 1178. The district court had relied on *Cook* to find "an unconscionable lack of mutuality because the listed third parties could easily enforce the agreement against [plaintiff], but [plaintiff] would need to show that the entities actually accepted a benefit under the agreement to enforce it against them." *See id.* (quotations omitted). In reversing, the Ninth Circuit noted that *Cook* "was predicated on the court's conclusion that the agreement applied to all claims, regardless of whether they were related to [that plaintiff's] employment." *See id.*; *see also Cook*, 102 Cal. App. 5th at 325 ("It is difficult to see how it is justified to expect [plaintiff] – as a condition of her employment at the university – to give up the right to ever sue a USC employee in court for defamatory statements or other claims that are completely unrelated to [her] employment."). Because the agreement in question was limited to employment-related claims, the Ninth Circuit

held that "any lack of mutuality does not rise to the level of substantive unconscionability." *See Cocom*, 179 F.4th at 1178 (analogizing to *Ayala-Ventura v. Superior Court*, 119 Cal. App. 5th 241 (Cal. App. 5th Dist. 2026), wherein a California Court of Appeal upheld an arbitration agreement which applied to defendant's "employees or agents in their capacity as such," meaning that "[a]ny claims [plaintiff] may have [had] against employees or agents unrelated to their role" were not covered by the agreement, and finding that while no analogous limiting language was present in the agreement before it, the limited scope of the agreement achieved an equivalent result).

Although *Cook* lends some support to Plaintiff's position, *Cocom* expressly considered that case and rejected the same mutuality argument as applied to virtually indistinguishable language. *Cocom* held that the agreement was limited to employment-related claims and that any resulting lack of mutuality therefore did not rise to substantive unconscionability. *See Cocom*, 179 F.4th at 1178 ("But *Cook*'s lack-of-mutuality analysis is again distinguishable, and again largely because of the [arbitration agreement's] narrower scope . . . any lack of mutuality [therefore] does not rise to the level of substantive unconscionability."). As a published Ninth Circuit decision directly addressing this issue, *Cocom* controls. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect."). Applying the holding in *Cocom*, as this Court must, it would find *Cook* distinguishable because, unlike the agreement there, the Agreement here covers only employment-related claims. Unlike the *Cook* agreement, the Agreement does not foreclose Plaintiff from bringing non-employment claims against Defendants' related entities (and other covered persons or entities). *See Ayala-Ventura*, 119 Cal. App. 5th at 257 ("The agreement in *Cook* was unconscionable in part because of the multifarious ways in which a claim against USC 'completely unrelated to [plaintiff's] employment' could arise."). Even if the Court did have a basis to depart from *Cocom* and found that the Agreement's lack of mutuality gave rise to some degree of substantive unconscionability, that imbalance, considered together with the minimal procedural unconscionability present here, would, without more, likely be insufficient to render the Agreement unenforceable. *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (explaining that procedural and substantive unconscionability are evaluated on a sliding scale, such that a lesser degree of one requires a greater degree of the other).

Moreover, as Defendants note, the Agreement does "not exempt any claims the employer

is more likely to bring." *See* Reply at 13; *compare* Agreement ¶ A (providing exclusions to workers' compensation, unemployment, CBA, NLRA, and ERISA claims, as well as claims federal law makes non-arbitrable), *with Stoker*, 120 Cal. App. 5th at 109-10 (noting, in finding arbitration agreement substantively unconscionable, that the agreement "applies to claims likely to be brought by [plaintiff], while excluding claims likely to be brought by [defendant]" because it includes "one-sided carveout[s]" for claims for "trade secret violations, trademark infringement, breach of fiduciary duty, breach of proprietary information, confidentiality obligations, and non-solicitation agreements"). Accordingly, the Court would not find that the Agreement is substantively unconscionable due to its lack of mutuality.

*c. Duration*

Plaintiff finally contends that the Agreement has an "indefinite duration" and is therefore substantively unconscionable. *See* Opp. at 10. Plaintiff cites the unconscionable agreement in *Cook*, which provided that it "shall survive the termination of Employee's employment, and may only be revoked or modified in a written document that expressly refers to the 'Agreement to Arbitrate Claims' and is signed by the President of the University." *See id.* (quoting *Cook*, 102 Cal. App. 5th at 317). The Agreement here contains no analogous survival clause, and only contains a provision stating that it "can be modified only by a writing both parties sign, stating the intent to revoke or modify this Agreement." *See* Agreement ¶ D.

Defendants, once again, point to *Cocom*, in which the Ninth Circuit held that "the fact that the [*Cocom* agreement] [was] limited to employment-related disputes imposes an inherent limitation on the agreement's duration" because "employment-related claims – the only ones covered by the [agreement] – stop accruing when the employment relationship ends." *See Cocom*, 179 F.4th at 1178. As discussed above, the Court would similarly find that the Agreement covers only employment-related disputes. Given *Cocom* and the absence of the survival clause present in *Cook*, the Court would not find the Agreement substantively unconscionable based on its duration.

## IV. Conclusion

Based on the foregoing discussion, the Court would **GRANT** the Motion, compel arbitration of Plaintiff's claims, strike the class allegations,[4] and stay this action.

---

[4] The Agreement contains a class action waiver. *See* Agreement ¶ B. A class action waiver and an agreement to arbitrate are "conceptually distinct." *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846, 848 (9th Cir. 2020).

Plaintiff has presented no argument in her Opposition concerning the waiver. Therefore, in light of the Court's tentative findings regarding unconscionability (the only challenge raised in opposition to the Motion), the Court would deem any separate challenge to the class action waiver forfeited. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).